STATE-WIDE INSURANCE COMPANY, Appellant-Respondent, v BUFFALO INSURANCE COMPANY, Also Known as BUFFALO REINSURANCE COMPANY, Respondent-Appellant, and Third-Party Plaintiff. BROADWAY BANK AND TRUST COMPANY, Third-Party Defendant-Respondent.

Second Department, December 31, 1984

**APPEARANCES OF COUNSEL**

*Bertram Herman* for appellant-respondent.

*Landau, Berkowitz & Nostrand (Jerome H. Berkowitz* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

RUBIN, J. P.

This appeal addresses the remedies which an insurance carrier may pursue to recover from a tort-feasor's insurer the amount of first-party benefits and uninsured motorist benefits it paid to a passenger in its insured's motor vehicle, where the tort-feasor's insurer had disclaimed coverage.

On August 3, 1975, Bienvenida Gonzalez was injured during a three-car accident, which occurred at the intersection of West 155th Street and Amsterdam Avenue in New York City. At the time of the accident, Ms. Gonzalez was a passenger in a motor vehicle owned by her relative and insured by plaintiff State-Wide Insurance Company (State-Wide). The accident was allegedly due to the negligence of the operator of a livery vehicle owned by Samuel Acquest. Six months prior to the accident, defendant Buffalo Insurance Company (Buffalo) had purportedly canceled its policy of insurance on Mr. Acquest's vehicle due to the nonpayment of premiums.

After Buffalo disclaimed coverage of Mr. Acquest's vehicle, Ms. Gonzalez made a claim against State-Wide under the standard uninsured motorist indorsement contained in its contract

of insurance (see Insurance Law, former § 167, subd 2-a, as amd by L 1965, ch 322, § 3). Ms. Gonzalez also filed a claim with State-Wide to recover first-party benefits pursuant to the mandatory personal injury protection (no-fault) indorsement (see Insurance Law, former § 672, subd 1, now § 5103, subd [a]; 11 NYCRR 65.2).

On May 19, 1976, Ms. Gonzalez served State-Wide with a demand for arbitration of her claim for uninsured motorist benefits. State-Wide inadvertently neglected to bring a proceeding to stay arbitration within the 20-day period provided by CPLR 7503 (subd [c]). Cognizant that said omission would preclude it from contesting validity of Buffalo's disclaimer of coverage of Mr. Acquest's vehicle in the arbitration proceeding (see *Aetna Life & Cas. Co. v Stekardis*, 34 NY2d 182; *Matter of Allstate Ins. Co. [Ness]*, 32 AD2d 912, 913), State-Wide decided to settle Ms. Gonzalez' claim for uninsured motorist benefits for $6,500 prior to the scheduled arbitration hearing. State-Wide also paid Ms. Gonzalez first-party benefits in the amount of $2,674.45.

In its capacity as subrogee of Ms. Gonzalez, State-Wide commenced an action against Samuel Acquest, the alleged tortfeasor, in Civil Court, New York County, to recover the payments it made to Ms. Gonzalez for first-party benefits and uninsured motorist benefits. Samuel Acquest defaulted and, after an inquest was conducted, State-Wide obtained a judgment for $9,174.45, plus costs, interest, and disbursements. On October 30, 1979, State-Wide served copies of the default judgment, entered October 17, 1979, with notice of entry on Samuel Acquest and on Buffalo. To recover the amount of the unsatisfied judgment against Samuel Acquest, in January, 1980, State-Wide commenced the instant action against Buffalo, pursuant to former section 167 (subd 1, par [b]) of the Insurance Law (now Insurance Law, § 3420, subd [a], par [2]), alleging that Buffalo had insured the tort-feasor's vehicle. Buffalo impleaded Broadway Bank and Trust Company (Broadway Bank), the premium finance agency which had mailed Samuel Acquest the cancellation notice. While this action was pending, Buffalo unsuccessfully moved in Civil Court, New York County, to vacate the default judgment entered against Samuel Acquest. Buffalo did not appeal the denial of its motion to vacate.

Subsequently, State-Wide moved for summary judgment against defendant Buffalo. Buffalo and Broadway Bank crossmoved, *inter alia,* to dismiss plaintiff's complaint on the ground State-Wide's sole remedy for recovering from the tort-feasor's

insurer the amount of first-party benefits paid to a covered person is an arbitration proceeding pursuant to former section 674 of the Insurance Law (now Insurance Law, § 5105) and that State-Wide, as Ms. Gonzalez' subrogee, had no standing under former section 167 (subd 1, par [b]) of the Insurance Law (now Insurance Law, § 3420, subd [a], par [2]) to recover uninsured motorist benefits. Broadway Bank also brought a motion for dismissal of the third-party complaint.

The only pertinent issue of fact raised by the parties in these motions and cross motion was whether Buffalo's policy of insurance on Mr. Acquest's vehicle had been validly canceled prior to the accident. Pending the disposition of the parties' respective motions, Special Term conducted a hearing on this issue. Upon finding the notice of cancellation was defective because the print was smaller than 12-point type, Special Term determined that the subject policy was in effect at the time of the accident (see Banking Law, § 576, subd 1, par [c]; *Matter of Liberty Mut. Ins. Co. [Stollerman]*, 70 AD2d 643, affd 50 NY2d 895). Thereafter, by order dated October 15, 1982, Special Term denied State-Wide's cross motion for summary judgment, granted that branch of Buffalo's cross motion which sought dismissal of State-Wide's complaint and denied Broadway Bank's cross motion as moot.

■■ So much of the complaint as seeks to recover first-party benefits from the tort-feasor's insurer (Buffalo) pursuant to former section 167 (subd 1, par [b]) of the Insurance Law was correctly dismissed on the ground plaintiff's exclusive remedy is an arbitration proceeding pursuant to former section 674 of the Insurance Law. However, the complaint was erroneously dismissed insofar as it seeks to recover from the tort-feasor's insurer pursuant to former section 167 (subd 1, par [b]) of the Insurance Law the payments State-Wide made to its insured, Ms. Gonzalez, under the uninsured motorist indorsement of its policy.

As to first-party benefits, it is not disputed that Ms. Gonzalez was a covered person at the time of the accident (see Insurance Law, former § 671, subd 10, now § 5102, subd [j]) and that State-Wide was liable for the payment of such benefits to Ms. Gonzalez (see Insurance Law, former § 672, subd 1, par [a], now § 5103, subd [a], par [1]; 11 NYCRR 65.2, 65.6 [j] [1]). Subdivision 1 of former section 674 of the Insurance Law, in effect at the time of the accident, gave any insurer liable for the payment of first-party benefits to a covered person "the right to recover the amount of such benefits so paid from the insurer of any other covered person if and to the extent that such other covered

person would have been liable, but for the provisions of this article, to pay damages in an action at law" (see L 1973, ch 13, § 1).

■ Since the cancellation of Buffalo's policy of insurance on the livery vehicle was adjudged ineffective, Samuel Acquest was also a covered person at the time of the accident (see Insurance Law, former § 671, subd 10). Furthermore, the default judgment entered against Samuel Acquest constitutes an adjudication that Acquest was liable for the damages sustained by Ms. Gonzalez. Therefore, State-Wide had a claim to recover first-party benefits against Buffalo arising under subdivision 1 of former section 674 of the Insurance Law. Subdivision 2 of former section 674 (now Insurance Law, § 5105, subd [b]) provides that the *"sole* remedy of any insurer to recover on a claim arising under subdivision one of this section, shall be the submission of the controversy to mandatory arbitration pursuant to procedures to be promulgated or approved by the superintendent" (emphasis supplied).

State-Wide argues that at the time it paid Ms. Gonzalez first-party benefits, an arbitration proceeding pursuant to former section 674 of the Insurance Law was not available because Buffalo denied coverage of Samuel Acquest's livery vehicle. In support of its contention, it cites the arbitration procedures promulgated by the Superintendent which expressly state that said procedures "shall not apply to any claim for recovery rights to which an insurer in good faith asserts a defense of lack of coverage of an alleged covered person on any grounds, unless specific written consent to mandatory arbitration is obtained from the insurer asserting such defense" (11 NYCRR 65.10 [a] [5]). Since it could not compel Buffalo to arbitrate its claim, State-Wide maintains that it could commence a subrogation action against the tort-feasor to recover the amount it paid in first-party benefits. It further argues that in the event a judgment awarding a monetary sum for such benefits remained unsatisfied for 30 days after service of a copy thereof with notice of entry on the tort-feasor and his insurer, it could commence an action against the tort-feasor's insurer, pursuant to former section 167 (subd 1, par [b]) of the Insurance Law to recover so much of the judgment as awarded recovery of first-party benefits. We disagree.

■ State-Wide, having paid Ms. Gonzalez' claim for first-party benefits under compulsion of its insurance contract is entitled, *pro tanto,* to stand in her place. However, State-Wide has overlooked the rule that a subrogee succeeds only to the rights and

remedies of its subrogor (see 57 NY Jur, Subrogation, §§ 1, 2, 26; 16 Couch, Insurance 2d, § 61:240; 31 NY Jur, Insurance, § 1620). Subdivision 1 of former section 673 of the Insurance Law (now Insurance Law, § 5104, subd [a]) provides that "[n]otwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for * * * basic economic loss". First-party benefits are payments to reimburse a covered person for basic economic loss (Insurance Law, former § 671, subd 2, now § 5102, subd [b]). Since Ms. Gonzalez, a covered person, did not have a right to recover for basic economic loss from Samuel Acquest, also a covered person, despite Buffalo's good-faith disclaimer, State-Wide, as Ms. Gonzalez' subrogee, stands in her shoes. Consequently, State-Wide had no right to recover first-party benefits from Samuel Acquest. To permit State-Wide to first commence an action against Samuel Acquest as a noncovered person and recover a judgment for the amount of first-party benefits it paid to a covered person, pursuant to subdivision 2 of former section 673 of the Insurance Law (now Insurance Law, § 5104, subd [b]), and thereafter, to commence an action against the tort-feasor's insurer for the amount of the unsatisfied judgment, pursuant to former section 167 (subd 1, par [b]) of the Insurance Law (now Insurance Law, § 3420, subd [a], par [2]), would not only violate the express language of subdivision 2 of former section 674 (now Insurance Law, § 5105, subd [b]) of said statute, which makes arbitration the sole remedy for recovering first-party benefits from a tort-feasor's insurer, but would allow a subrogee to recover indirectly what it could not have recovered directly in an action against an insured tort-feasor.

Contrary to State-Wide's contention on appeal, 11 NYCRR 65.10 (a) (5) is only a bar to the timely commencement of an arbitration proceeding, pursuant to former section 674 (now § 5105) of the Insurance Law, when an insurer liable for the payment of first-party benefits fails to expeditiously exercise its legal right to challenge the validity of the tort-feasor's insurer's disclaimer of coverage or when there is an adjudication that the disclaimer was valid.

State-Wide's payment of first-party benefits where the tort-feasor's insurer, in good faith, disclaims coverage does not affect State-Wide's right to litigate before a court the validity of the disclaimer (see 11 NYCRR 65.6 [j] [4]; see, also, *Matter of MVAIC* [*Malone*], 16 NY2d 1027). After paying the first-party benefits, State-Wide could have commenced an action against

Buffalo for a declaratory judgment with respect to the issue of coverage of Acquest's livery vehicle (CPLR 3001). As long as the issue of coverage is in litigation, the Statute of Limitations for submitting a recovery claim to arbitration under subdivision 1 of former section 674 (now § 5105, subd [a]) of the Insurance Law (see 11 NYCRR 65.10 [d] [5]) is tolled until a final determination of said issue (11 NYCRR 65.10 [d] [5] [i]). Upon a judicial determination that Buffalo's disclaimer of coverage was invalid, 11 NYCRR 65.10 (a) (5) would no longer preclude State-Wide from compelling Buffalo to submit to mandatory arbitration of its claim to recover the amount of first-party benefits it paid to Ms. Gonzalez, because Buffalo would no longer be able to assert a defense of lack of coverage. The issue of which operator or owner of the motor vehicle was at fault could then be determined by the arbitration panel (see 11 NYCRR 65.10 [d] [2] [iv]; [4] [iii]). If the Statute of Limitations for commencing an arbitration proceeding has expired, it may only be attributable to an insurance carrier's failure to act expeditiously to obtain an adjudication of the issue of coverage, or to file his demand for arbitration after such an adjudication. In the instant case, it was adjudicated that the tort-feasor was insured at the time of the accident. Consequently, State-Wide's exclusive remedy to recover from the tort-feasor's insurer the amount of first-party benefits paid to Ms. Gonzalez was a timely commenced arbitration proceeding (Insurance Law, former § 674, subd 2) and not an action pursuant to former section 167 (subd 1, par [b]) of the Insurance Law.

It should be noted that in a case where it is determined that a disclaimer of coverage was valid, an arbitration proceeding would not be available and an insurer who seeks to recover the amount of first-party benefits it paid to a covered person may look to the remedies set forth in subdivision 2 of former section 673 (now § 5104, subd [b]) of the Insurance Law.

Unlike subdivision 2 of former section 674 (now § 5105, subd [b]) of the Insurance Law regarding first-party benefits, there is no statute or regulation which establishes an exclusive remedy for the recovery of uninsured motorist benefits paid by an insurance carrier to its insured pursuant to the uninsured motorist indorsement of its policy.

Since Ms. Gonzalez was occupying an automobile owned by State-Wide's named insured at the time of the accident, she falls within the meaning of "insured," as defined in the uninsured motorist indorsement of State-Wide's policy. By filing a claim with State-Wide for uninsured motorist benefits, Ms. Gonzalez

was seeking recovery for noneconomic loss (see Insurance Law, former § 671, subd 3, now § 5102, subd [c]), as distinguished from first-party benefits which compensate a claimant for basic economic loss (see Insurance Law, former § 671, subds 1, 2, now § 5102, subds [a], [b]). By compensating its insured for noneconomic loss under compulsion of the uninsured motorist indorsement in its insurance contract, State-Wide was subrogated to its insured's rights against the offending motorist (see *Liberty Mut. Fire Ins. Co. v Perricone,* 54 AD2d 975; 57 NY Jur, Subrogation, §§ 1, 2; 16 Couch, Insurance 2d, § 61:240; 31 NY Jur, Insurance, § 1620) and his disclaiming carrier (see *Matter of Travis [General Acc. Group],* 31 AD2d 20; *Olenick v Government Employees Ins. Co.,* 68 Misc 2d 764, mod 42 AD2d 760; cf. *MVAIC v National Grange Mut. Ins. Co.,* 19 NY2d 115, 119).

In 1981, subdivision 2-a of former section 167 (now § 3420, subd [f], par [1]) of the Insurance Law was amended to bar payment of a claim for noneconomic loss under an uninsured motorist provision unless a covered person had incurred a serious injury (L 1981, ch 435, § 1). Prior to this amendment, a claimant such as Ms. Gonzalez was not required to show that she sustained a "serious injury", before he or she could recover for noneconomic loss under the uninsured motorist provision of her insurer's policy (see *Matter of Nasca v Royal Globe Ins. Co.,* 84 AD2d 675; *Matter of Dean v Nationwide Mut. Ins. Co.,* 75 AD2d 984). Nevertheless, in a situation where the tort-feasor was a covered person, the claimant could not recover her noneconomic loss in a negligence action against the insured tort-feasor unless she had sustained a serious injury (see Insurance Law, former § 673, subd 1, now § 5104, subd [a]).

Since Samuel Acquest was a covered person at the time of the accident, Ms. Gonzalez had the right to recover her noneconomic loss in a negligence action against Acquest provided she had sustained a "serious injury" (see Insurance Law, former § 673, subd 1).

"[I]f the reasonable and customary charges for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services necessarily performed as a result of the injury would exceed five hundred dollars", the claimant has sustained a "serious injury", as defined by former section 671 (subd 4, par [b]) of the Insurance Law, which was in effect at the time of the accident (see L 1973, ch 13, § 1; see, also, *Montgomery v Daniels,* 38 NY2d 41). In the instant case, Ms. Gonzalez had incurred such expenses in an amount exceeding $2,000 during 7½ days of hospitalization for the injuries sustained in the

subject accident. The evidence in the record on appeal conclusively establishes an apparently undisputed fact that Ms. Gonzalez had sustained a "serious injury". Having sustained a "serious injury", State-Wide's subrogor had the right to recover her noneconomic loss from the insured tort-feasor, Samuel Acquest. By paying Ms. Gonzalez' uninsured motorist claim in order to compensate her for noneconomic loss, State-Wide had the right to recover these payments in a subrogation action against Samuel Acquest (see *Liberty Mut. Fire Ins. Co. v Perricone, supra*).

When the default judgment entered against Acquest in the subrogation action remained unsatisfied 30 days after service of a copy of said judgment with notice of entry on Acquest and his disclaiming carrier, State-Wide, as its insured's subrogee, had standing to commence an action against Buffalo, pursuant to former section 167 (subd 1, par [b]) of the Insurance Law, to recover so much of said judgment as represented the amount of uninsured motorist benefits State-Wide had paid Ms. Gonzalez (see Insurance Law, former § 167, subd 7, par [b], now § 3420, subd [b], par [2]; *Matter of Travis [General Acc. Group]*, 31 AD2d 20, *supra; Olenick v Government Employees Ins. Co.*, 68 Misc 2d 764, mod 42 AD2d 760, *supra;* cf. *MVAIC v National Grange Mut. Ins. Co.*, 19 NY2d 115, 119, *supra*).

We further note that State-Wide's failure to make an application to stay arbitration of Ms. Gonzalez' uninsured motorist claim within the 20-day period prescribed in CPLR 7503 (subd [c]) merely precludes State-Wide from contending in the arbitration proceeding that the accident did not fall within State-Wide's agreement to arbitrate because Buffalo's disclaimer was ineffective *and* did not render Acquest's vehicle "uninsured" under the standard uninsured motorist indorsement of its insurance contract (see *Matter of Allstate Ins. Co. [Ness]*, 32 AD2d 912). An untimely application for a stay merely constitutes a bar to judicial intrusion into the arbitration proceeding (see *Aetna Life & Cas. Co. v Stekardis*, 34 NY2d 182, *supra*) and does not preclude State-Wide from litigating the validity of Buffalo's disclaimer of coverage in an action pursuant to former section 167 (subd 1, par [b]) of the Insurance Law. Moreover, State-Wide's settlement of its insured's claim to recover for noneconomic loss under the uninsured motorist indorsement of its policy does not enure to the benefit of the tort-feasor or his disclaiming insurance carrier (cf. *Cerciello v Rodriguez*, 25 AD2d 429).

For the afore-mentioned reasons, we conclude that Special Term properly dismissed so much of plaintiff's complaint as

sought recovery of first-party benefits but erred in dismissing so much of State-Wide's complaint as sought recovery from Buffalo pursuant to former section 167 (subd 1, par [b]) of the Insurance Law of the portion of the default judgment against Buffalo's insured which relates to the payment State-Wide made to Ms. Gonzalez pursuant to the uninsured motorist provision of its insurance contract. Rather than dismissing this portion of the complaint, Special Term should have granted State-Wide summary judgment with respect thereto. Accordingly, the order should be modified by (1) granting summary judgment to plaintiff for recovery of the portion of the amount awarded in the Civil Court judgment against Buffalo's insured which relates to payments State-Wide made under its uninsured motorist indorsement, plus interest, and (2) reinstating the third-party action. The matter should be remitted to Special Term to calculate the award, and for further proceedings in accordance herewith.

Furthermore, we have reviewed the contentions raised in the cross appeal by Buffalo and find them to be without merit.

BOYERS, LAWRENCE and EIBER, JJ., concur.

Order of the Supreme Court, Nassau County, dated October 15, 1982, modified, on the law, by (1) granting summary judgment to plaintiff against defendant for recovery, pursuant to former section 167 (subd 1, par [b]) of the Insurance Law, of that portion of a judgment of the Civil Court, New York County, entered October 17, 1979, against defendant's insured as relates to payments plaintiff made to Bienvenida Gonzalez under its uninsured motorist indorsement, plus interest, and (2) reinstating the third-party action. As modified, order affirmed insofar as appealed from, without costs or disbursements, and matter remitted to Special Term for a computation of plaintiff's award.