OPINION OF THE COURT
Jasen, J.
On October 29, 1973, the automobile belonging to appellant Virginia Curry, in which appellants Sidney Curry and Ruby Peoples were passengers, collided with an automobile owned by Maria Sanon but operated by Charles Moise. On July 22, 1975, the Resources Insurance Company, insurer of the Sanon vehicle, was adjudicated insolvent and placed in liquidation. Appellants, on February 23, 1976, served a demand for arbitration based on the New York Automobile Accident Indemnification Endorsement (Indemnification Endorsement) in the liability policy of Virginia Curry then in effect with respondent State-Wide Insurance Company. Respondents moved to stay arbitration on the ground that section 334 of the Insurance Law precluded the availability of the remedy afforded by the Indemnification Endorsement. Special Term denied the motion to stay arbitration. The Appellate Division reversed unanimously.
In this proceeding to stay arbitration, we are asked to decide whether a person involved in an automobile accident is an "uninsured motorist” within the meaning of the New York Automobile Accident Indemnification Endorsement where the person is insured by a domestic insurer which becomes insolvent subsequent to the accident.
Resolution of this issue depends not only on subdivision 2-a of section 167 of the Insurance Law which established the Indemnification Endorsement, but also on sections 333 and 334 of the Insurance Law, which provide protection for automobile accident victims where the liable insurer is insolvent. Tracing the history of these statutory provisions serves as an instructive means of gaining a perspective on their interrelationship.
In 1947, the Legislature, by enacting section 333, created the Motor Vehicle Liability Security Fund and thereby secured protection for victims of vehicular accidents where the insolvency of an insurer doing business in New York prevented it from meeting its insurance obligations. The recovery *302 provided by the fund was coextensive with the contractual liability of the defaulting insurer.
Additional protection was afforded automobile accident victims when, in 1958, the Legislature passed subdivision 2-a of section 167, which provided that the Motor Vehicle Accident Indemnification Corporation (MVAIC)[1] would compensate victims of accidents caused by "uninsured motorists”. A 1965 amendment to this section shifted the Indemnification Endorsement obligation from MVAIC to the victim’s insurer.
The enactment of section 334 in 1969 broadened the coverage furnished by section 333 to include various forms of property and liability insurance other than automobile insurance as provided in section 333 and renamed the fund, The New York Property and Liability Insurance Security Fund (Security Fund). Insofar as it is consistent with section 334, the older provision remains in force, and the passage of section 334 has effected little change regarding the protection afforded automobile accident victims by section 333.
Although sections 333 and 334 clearly cover accident victims where insurers due to insolvency are unable to satisfy their insurance obligations, appellant contends that the "uninsured motorist” coverage of subdivision 2-a of section 167 provides an alternative remedy to that prescribed in sections 333 and 334, and that, where insolvency renders an insurer incapable of satisfying its insurance obligations, a claimant may elect between the two remedies.
We disagree. The purpose of the Indemnification Endorsement as required by subdivision 2-a of section 167 of the Insurance Law is to protect persons who are injured by financially irresponsible motorists by making available a $10,-000 fund to which an injured person may look for compensation for his injuries. (Matter of Neals v Allstate Ins. Co., 34 AD2d 265.) This statutory scheme presupposes that no other liability coverage exists to compensate innocent victims of motor vehicle accidents. Where an injured person may look to the Security Fund, created pursuant to sections 333 and 334 of the Insurance Law, for compensation, there is no need to protect such injured person under the Indemnification Endorsement, since compensation is otherwise available. To hold that a claimant may elect between the two statutory remedies would frustrate the purpose behind the Security Fund, which *303 was to guarantee the accident victim a recovery identical to what would have been available but for the responsible motorist’s insurer’s insolvency.
Furthermore, the very languge of subdivision 2-a of section 167 of the Insurance Law precludes application of the Indemnification Endorsement in a case such as this. Subdivision 2-a of section 167 requires that insurers provide an Indemnification Endorsement for injuries resulting from an accident caused by "an owner or operator of an uninsured motor vehicle” or an owner or operator of "an insured motor vehicle where the insurer disclaims liability or denies coverage”. Clearly the vehicle insured by the insolvent Resources Insurance Company fits neither of these categories. While the Resources Insurance Company became insolvent after the accident, the insurance policy itself survived, and the obligations owed its insured were assumed by the Security Fund for the full amount of the policy to a limit of $1,000,000. (Insurance Law, § 334, subd [2].) Hence, we conclude that Sanon’s vehicle was neither "an uninsured motor vehicle” nor "an insured vehicle where the insured disclaimed] liability or denie[d] coverage” within the meaning of subdivision 2-a of section 167 of the Insurance Law.
Our conclusion that the "Uninsured Motorist” endorsement is inapplicable under the facts of this case finds support in the legislative memorandum discussing the purpose sought to be achieved by the 1958 MVAIC legislation which included subdivision 2-a of section 167: "This bill is designed to close the gaps which continue to exist under the Compulsory Insurance Law that was passed in 1956, with respect to assuring payment of compensation to innocent victims of motor vehicle accidents.” (NY Legis Ann, 1958, p 299.) If. the purpose of subdivision 2-a of section 167 was to "close the gaps * * * with respect to assuring payment of compensation to innocent victims of motor vehicle accidents”, surely the Legislature did not intend to provide another remedy for those insured by insolvent domestic insurers, where, due to section 333, no gap had existed as to assuring compensation to such victims for many years. Although subdivision 2-a of section 167 should be liberally applied so that its purpose of protecting accident victims will be accomplished (Matter of Vanguard Ins. Co. [Polchlopek], 18 NY2d 376, 381), where the legislative intent is not frustrated, there is no sound reason for an overly broad construction of the provision.
*304 It should also be recognized that permitting recourse to the Indemnification Endorsement in cases like this would be manifestly unfair to domestic insurers. Having contributed to the Security Fund, they are entitled to be sheltered from insurance obligations where the Security Fund provides an adequate remedy.
In holding as we do today, we are mindful that two Appellate Divisions, when confronted with similar issues, arrived at an interpretation of subdivision 2-a of section 167 contrary to ours. In Matter of Taub (MVAIC) (31 AD2d 378), the First Department found that where an insurer had become insolvent and was liquidated after an automobile accident, the insolvency "was tantamount to a disclaimer of liability, or denial of coverage” (Matter of Taub [MVAIC], supra, at p 381.) A like result was reached by the Third Department in Matter of Travis (General Acc. Group) (31 AD2d 20), wherein an insurer became insolvent prior to the accident.[2] Although both cases expressed an overly broad interpretation of subdivision 2-a of section 167, they were nevertheless correctly decided on their facts. In both cases the insolvent insurer apparently was not licensed to do business in New York and, therefore, had not contributed to the fund created by section 333. As a result, the claimants could not seek compensation from the fund. Under these circumstances, the defendants were "uninsured motorists” and the Indemnification Endorsement was properly held applicable, not as an alternate remedy to the Motor Vehicle Liability Security Fund, but as the exclusive remedy.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

. MVAIC was created in 1958 pursuant to section 602 of the Insurance Law.

. No mention was made in either Taub (supra) or Travis (supra) of section 333 of the Insurance Law. Section 334 had not yet been enacted when these decisions were rendered.